LOTTINGER, Judge.
This is an action wherein the plaintiff, a Delaware Corporation, is seeking to have recognized a chattel mortgage which was executed and recorded in the State of Missouri on a certain Ford automobile now owned by the defendant, a resident of the Parish of Cameron. Suit was instituted by sequestration proceedings. The defendant filed a motion to dissolve the writ of sequestration, which was argued and overruled and the case then went to trial on the merits. The defendant now appeals from a judgment of the lower court which recognized the mortgage as valid.
The case presents no seriously disputed issues of fact, and the transactions which took place, insofar as pertinent here, are as follows: On June 1, 1948, one Harry Kotteman, doing business as Kotteman Used Car Company, purchased the automobile in question and in due course procured a title certificate to same. Subsequently, on June 7, 1948, Kotteman sold the car to Merit Motor Sales and at the same time delivered the title certificate, which bore his signature as assignor. His signature was not notarized, however, nor did the name of the assignee appear on the certificate in the appropriate space. On this same day Merit Motor Sales executed the mortgage-now being sued upon, which covered the car in question and another car with which we are not concerned. On June 8, 1948, the automobile was sold by Merit Motor Sales to the Kribs Motor Company. Instead of obtaining a new title certificate as required by law, the Kribs Motor Company merely received the same title certificate originally obtained by Harry Kotteman. Later, on June 12, 1948, the automobile was sold by the Kribs Motor Company to the Sul-phur Motor Company. A representative of the latter concern drove the car to Louisiana where it finally came to rest in the hands of the defendant. All of the above transactions, including the sale to the Sul-phur Motor Company, occurred in the State of Missouri. We will, therefore, be guided in our determination of the cause by the laws of Missouri relative to sales and chattel mortgages, for if the mortgage in question is valid and enforceable under Missouri law, the plaintiff is entitled to have it recognized in this state. See General Motor Acceptance Corporation v. Nuss, 1940, 195 La. 209, 196 So. 323.
The statutory law of Missouri covering title certificate is to be found in Section 8382, Revised Statutes of Missouri for 1939 as amended by the Laws of 1947, pages 387, 388 and 389, R.S. 1949, §§ 301.190, 301.210, and pertinent parts of which we quote:
(d) Certificate of ownership: “* * It shall be unlawful for any person to operate in this state a motor vehicle or trailer registered under the provisions of the law unless a certificate of ownership shall have been issued as herein provided. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the Director of Revenue, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer. ' The buyer shall then present such certificate, assigned as aforesaid, to the Director of Revenue, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, the fee therefor being $1.00 * * * It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void. * * *”
From the above quoted portions of the Missouri statute. it appears- that each time an automobile is sold in that state the purchaser must obtain from the seller *462 a completed title certificate issued to him and must then return the old title certificate to the Commissioner of Revenue with an application for the issuance of a new title certificate. It appears further that any sale not accompanied by the assignment of the certificate of ownership is fraudulent and void, and it is upon this ground that the defendant seems mainly to rely.
It will be remembered that at the time of the sale from Kotteman to Merit Motor Sales the title certificate was delivered along with the automobile. This certificate, however, though signed by Kotteman, was not acknowledged by him -and the name of the transferee was not set out. The defendant argues very strenuously that this was not a compliance with the statute and as a consequence the sale was null. He argues further that if the sale was null then the mortgage must necessarily fall as it was executed by a party not the owner of the property sought to be covered thereby.
The plaintiff contends that even though the assignment was not properly executed on the title certificate, Merit Motor Sales received either an equitable title or sufficient legal title to execute a legally enforceable mortgage. In support of this proposition they cite the case of National Bond & Investment Co., v. Mound City Finance Co., Mo.App., 161 S.W.2d 664, 667. The facts in that case disclose an assignment in blank on the title certificate accompanied by delivery of both the certificate and the automobile. In holding valid a subsequent chattel mortgage the court found that the vendee received either legal or equitable title to the car and thereby; possessed sufficient interest to support the mortgage. Tire main point of distinction between that case and the case at bar is the fact that in the cited case the signature of the registered owner had been acknowledged before a notary public, while in the instant case there was no acknowledgment. That the court in the National Bond & Investment Co. case did give weight to the acknowledgment is evident from the following language used by the court:
“Appellant says there was no assignment to G. V. Fletcher, Inc., in the case at bar, because said company was not named as assignee in the blank space provided in the form of assignment on said certificate for the name of the assignee. It is true that the name of G. V. Fletcher, Inc., does not appear as assignee on said certificate, but that fact is not conclusive on the issue as to whether title was in fact assigned to that company. It appears, however, that the registered owner did endorse his name to the assignment form, and that his signature was acknowledged before a notary public. The only legitimate inference that could be drawn -from this fact was that Meagher, when he signed said assignment form, and acknowledged same, intended to assign the title to the car.”
The defendant, on the other hand, cites the cases of Pearl v. Interstate Securities Company, 357 Mo. 160, 206 S.W.2d 975 and Peper v. American Exchange National Bank of St. Louis, 357 Mo. 652, 210 S.W.2d 41, 43. In the Peper case the plaintiff brought a suit to cancel certain mortgages affecting the automobile in her possession. Thfe automobile was originally owned by Robert Wherry. He authorized his father to sell the car. The car was sold to Duncan. The father signed the son’s name, but the assignee was not named in the blank space on the reverse side of the title certificate, nor was there any acknowledgment of the signature. The title certificate was retained by Duncan, who executed several mortgages on the automobile by showing the title certificate to the parties to which he gave mortgages. In permitting the plaintiff to have the mortgages cancelled, the Court said:
“The dissenting opinion in the present cause in the court of appeals made reference to Pearl v. Interstate Securities Company, Mo.App, 198 S.W.2d 867. That case was transferred to the supreme court and decided en banc December 8, 1947. Pearl v. Interstate Securities Company, 357 Mo. 160, 206 S.W.2d 975. The ruling by this court in the Pearl case is, we think, decisive in the present case.
*463 "Pearl was a used car dealer in Mexico, Missouri. August 12, 1942, he purchased from one Backer a Chevrolet car and received from Backer the car and Backer’s certificate of title signed by him as assignor in the assignment 'blank; no assignee was named, and the assignment was not acknowledged. August 14, two days later, Pearl purchased a Buick from one Cunningham who delivered the car and his certificate of title. Cunningham signed the assignment as assignor, ibut left the assignee blank, and did not acknowledge. The next day (August 15th) Pearl took both cars to Independence, Missouri, and sold and delivered them to the Security Motor Company. He also delivered to the motor company the two certificates of title without further change therein. The sale was for cash, but Pearl accepted the motor company’s check. The next morning (August 16th) Pearl deposited the check in his bank at Mexico, and on that day the motor company gave a mortgage on the two cars to the defendant Interstate Securities Company.
“Soon after the motor company gave the mortgage to the Interstate Securities Company, the motor company was placed in receivership. Both Pearl and the Interstate Securities Company filed intervening petitions claiming title to the two cars. The cars had remained in the warehouse of the Interstate Securities Company, which company obtained new title certificates on affidavit of repossession and mortgage foreclosure. Pearl, in separate counts, brought replevin and conversion against the Interstate Securities Company. He was unsuccessful in the trial court and appealed to the Kansas City Court of Appeals where the judgment of the trial court was affirmed, but the cause was transferred as stated. The opinion by this court in the Pearl case holds that the Security Motor Company got no title to the two cars and therefore had no title to mortgage to the Interstate Securities Company.
“Sec. 8382, R.S. 1939, Mo.R.S.A. § 8382 requires, for a valid sale of a used motor vehicle, that the holder of the certificate of title endorse thereon an assignment prescribed by the commissioner of motor vehicles and the assignment be acknowledged. Such is the ruling by this court in the Pearl case. It is pointed out in that case by this court that Sec. 8382 does not specifically require acknowledgment, but it is ruled, 206 S.W.2d loe. cit. 978, that the statute is ‘ibroad enough to authorize the Commissioner to require an acknowl-edgement as a part of the assignment form he [is by the statute] required to prescribe.’
“In the Pearl case in this court it is said, 206 S.W.2d loe. cit. 979: ‘What was required to vest title in Security (Security Motor Company), even if it had paid the check for the purchase price, was both a completion of the assignments so as to vest title in plaintiff (Pearl) and an execution and acknowledgment of the dealer’s reassignment on the certificates by him to Security. Since neither was ever done, Security never got any title it could mortgage; and could not give defendant any lien on these cars. Therefore, defendant’s mortgagor could get nothing by its foreclosure. Under these facts, following Rankin v. Wyatt, supra (335 Mo. 628, 73 S.W.2d 764, 94 A.L.R. 941.) we must hold that plaintiff had a special interest in the cars which gave him a right of possession superior to defendant’s claim under a mortgage from a mortgagor who never got any title.’
“So from the ruling by this court in the Pearl case it is quite clear that Duncan in the present case did not 'have title to the Wherry car when he executed the mortgages mentioned.- It is true that he deposited with the defendant bank the Wherry certificate of title showing in blank in the assignment thereon Robert Wherry as assignor and himself as assignee, but there was no acknowledgment, and had Duncan’s name been rightfully inserted as assignee, still, absent acknowledgment, he had no title, and having no title he had nothing to mortgage.”
It is apparent that the cases cited by counsel are not in accord, unless they can be reconciled on the -basis of the presence of a notarial acknowledgment in the National Bond & Investment Co. case. Aside from this, however, we are disposed to accord the greater weight to the Peper and *464 Pearl cases for the reason that they were both decided by the Supreme Court of Missouri subsequent to the National Bond & Investment Co. case which was decided by the St. Louis Court of Appeal. We note that the expressions of the Supreme Court of Missouri in both, the Peper and Pearl cases were on writs of certiorari and that they reversed the decisions of the Court of Appeal in each instance.
In Blashfie'd’s Cyclopedia of Automobile Law and Practice, Vol. 7a, Sec. 4680, we find the following: “An assignee under an unacknowledged assignment of a certificate of title, having no title, cannot mortgage the vehicle.” Citing the case of Peper v. American Exchange National Bank of St. Louis, 357 Mo. 652, 210 S.W.2d 41.
Our conclusion from these authorities, is that under the statute law of Missouri as interpreted 'by its Supreme Court, the Merit Motor Sales in the case at bar did not acquire sufficient title to enable it to grant to plaintiff a valid and enforceable mortgage on the automobile. We feel sure that recovery of the car would be denied by the Courts of Missouri and cannot, therefore, accord to the plaintiff greater rights here than it would be entitled to there.
From our conclusions as reached above, it necessarily follows that the title of the defendant to the automobile is defective. However, this fact can be of no comfort to the plaintiff, for under universally accepted rules in cases of this sort, the plaintiff must recover on the strength of his own title and not on the weakness of that of the defendant. The plaintiff’s cause of action necessarily rests upon there being a valid mortgage, and having concluded that the mortgage in this case is invalid, the writ of sequestration must be dissolved.
In his answer defendant asked for damages in the sum of $500.00 and attorneys’ fees in the same amount. In his brief, we note, he now only seeks attorneys’ fees in the sum of $250.00. We feel that neither damages nor attorneys’ fees are due in this case. It is well set-tied that a party litigant who succeeds in having a conservatory writ dissolved on defenses to the merits can not recover attorneys’ fees for the dissolution of the writ. Edwards v. Wiseman, 198 La. 382, 3 So.2d 661; Burtrum Bros. Motor Co. v. Dryden La.App., 40 So.2d 525. The writ in this case is not dissolved because it was issued illegally or improvidently, but is dissolved after a full hearing on the merits of the case. That being true, we can not grant attorneys’ fees on defenses to the merits of the case. It is likewise settled Jurisprudence that, even in cases where attorneys’ fees are allowed, absence of proof that the fees have actually been paid, or an obligation incurred to pay, defeats recovery. Alfano v. Franek, 159 La. 498, 105 So. 598; Burglass v. Villere 170 La. 805, 129 So. 209; General Finance Co., of Louisiana v. Veith, La.App., 177 So. 71; Rhodes v. Collier, 215 La. 754, 41 So.2d 669. The record in this case contains no testimony or proof whatsoever as to either damages or attorneys’ fees or their value.
For the reasons assigned above, the judgment of the lower court is reversed and the writ of sequestration dissolved, all costs to be paid by plaintiff.